## Chauvenet v. Person, Appellant.

*Mines and mining—Lease—Continuous mining—Forfeiture.*

The right to forfeit a mining lease for cesser of mining for one year is not defeated by a provision in the lease for the payment of a minimum royalty, and the acceptance of such a minimum royalty is not a waiver of the right of forfeiture.

A lease of iron ore gave the lessee one year to explore the premises for ore and contained a covenant that immediately thereafter mining operations should commence, and that if the lessee failed to prosecute

the operations, and should at any time during the remaining term of the agreement for a continued period of one year fail to mine and raise ore upon which royalty was payable, "with the view of fully working said land, everything contained herein shall at the option of the lessors, cease and be forever null and void, excepting as to the liability of the lessees herein." The lease also provided "that after the expiration of one year from the date of this lease, the lessee must mine and take away at least one thousand tons of ore annually, or pay the royalty on that amount." *Held,* (1) that after the expiration of one year, the lessors could avoid the lease on the lessee's failing at "any time" to prosecute the mining operations for a continuous period of one year; (2) that the provision for the payment of a minimum royalty did not defeat the right of forfeiture for cesser of mining for one year; and (3) that the acceptance of the minimum royalty was not a waiver of the forfeiture-bearing clause of the lease.

ELKIN, J., dissents.

Argued March 5, 1907. Appeal, No. 214, Jan. T., 1906, by defendant, from judgment of C. P. Berks Co., Nov. T., 1905, No. 49, on verdict for plaintiff in case of S. H. Chauvenet v. M. J. Person, Allen C. Smith, John Kaufman and Henry Kaufman. Before MITCHELL, C. J., BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Ejectment for mineral land in Earl township. Before ERMENTROUT, P. J.

The facts are stated in the opinion of the Supreme Court.

The trial judge charged in part as follows:

By the terms of the lease the action in declaring it null and void did not interfere with the liability of the lessees up to the time of serving the notice. The lessors had a right to collect and receive any royalties so due. The receipt of such royalty was not, therefore, a waiver of any right of forfeiture. The minimum royalty was all that the lessees were liable to pay. The payments of $200 on April 6, 1905, and of $50.00 on July 13, 1905, respectively, were due and payable, regardless of any question of forfeiture of the lease, as the minimum royalties then due.

When the lease was executed, the lessees entered into possession of the premises. Although executed, it appears the lease was not acknowledged until July 13, 1905. This acknowledg-

ment was simply supplying an omission to do so when the lease was executed, and can only be construed to be an acknowledgment and reaffirmation of the provisions therein contained. The formal acknowledgment before the officer was simply an act of justice to both parties, preventing any dispute as to its terms and preserving their respective rights. By so doing no rights thereunder were surrendered or waived by either party. The lease was in full force until the lessors exercised their option to terminate it. The acknowledgment of it was no waiver of lessors' right to exercise any option they possessed.

I, therefore, say that if the testimony is believed by the jury, and the facts as to the breach of the lease therein set forth are fully made out, the plaintiff would be entitled to a verdict in his favor for the land described in the writ and six cents damages and costs.

Verdict for plaintiff upon which judgment was entered. Defendants appealed.

*Errors assigned* among others was above instruction, quoting it.

*Edward Harvey* and *C. H. Ruhl,* for appellants.—Forfeiture of a lease will not as a rule be allowed for a mere failure to pay rent. There must be a demand : Verdolite Co. v. Richards, 7 North. Co. 113; Haldeman v. Sampter, 2 Del. Co. 106.

The receipt of rent is a distinct and unequivocal admission that the relation of landlord and tenant still exists, and therefore is necessarily a waiver of any forfeiture of the lease which might previously have accrued : Newman v. Rutter, 8 Watts, 51; Beatty v. Masavage, 13 Luz. Leg. Reg. Rep. 40; Navigation Co. v. Early, 162 Pa. 338; Natl. Pub. Assn. v. Furniture Co., 18 W. N. C. 379; Riddle v. Mellon, 147 Pa. 30.

Where the lessor sues for the entire amount of rent due, he ratifies and confirms the continued existence of the lease and waives all previous forfeitures: Alexander v. Touhy, 13 Kan. 64; Randol v. Tatum, 98 Cal. 390 (33 Pac. Repr. 433); Mc-Kildoe v. Darracott, 13 Gratt. (Va.) 278; Camp v. Scott, 47 Conn. 366; Collins v. Canty, 60 Mass. 415; Croft v. Lumley, 6 H. L. Cases, 672; Arnsby v. Woodward, 6 Barn. & Cress. 519; Conger v. Duryee, 90 N. Y. 594.

*Jefferson Snyder*, of *Snyder & Zieber*, for appellee.—The exaction of the minimum royalty does not cancel the right to forfeit for failure to mine in good faith: Becker v. Werner, 98 Pa. 555.

The failure to operate the mines in good faith from April 20, 1904, until August 19, 1905, when Mrs. Spang gave notice that she availed herself of her option to declare a forfeiture, was a continuing breach of the lessee's covenant, and even if the receipts of the minimum royalty April, 1905, and July 12, 1905, and the acknowledgment of the lease July 13, 1905, constituted a waiver of any breaches concluded at these several periods, the lessor had a right to declare a forfeiture for the continued breach concluded on August 19, 1905: Doe. v. Bancks, 4 Barnewall & Alderson, 401; Doe v. Baker, 5 Welsby, Hurlst. & Gordon, 498; Granite Bldg. Assn. v. Greene, 25 R. I. 48 (54 Atl. Repr. 792); Alexander v. Hodges, 41 Mich. 691 (3 N. W. Repr. 187); Gluck v. Elkan, 36 Minn. 80 (30 N. W. Repr. 446); Farwell v. Easton, 63 Mo. 446; Jackson v. Allen, 3 Cowen, 220; Bleecker v. Smith, 13 Wend. 530; Doe v. Woodbridge, 9 Barn. & Cress. 376; Fryett v. Jeffreys, 1 Espinasse, N. P. Cases, 393; Price v. Worwood, 4 H. & N. 512.

OPINION BY MR. JUSTICE MESTREZAT, April 1, 1907:

This is ejectment to enforce the forfeiture of a mining lease. Sarah A. Spang was the owner in fee of a tract of land containing about 118 acres in Berks county, and she and Jacob K. Spang, her husband, "the lessors," by an agreement dated April 20, 1903, assigned, granted, bargained and sold to Allen C. Smith, "the lessee," for the term of twenty years, the exclusive right to all the iron ore and other minerals in the land with the right to mine and remove the same. The consideration was twenty cents a ton, payable quarterly, on all merchantable iron ore mined and taken from the premises.

The lease contained the following provision: "It is further understood and agreed that the said lessee shall have the privilege for a period of one year from the date hereof of exploring and digging for ore upon the said demised premises, and that immediately thereafter mining operations must actively commence; and in case the said lessee shall immediately upon the

expiration of one year from this date fail to prosecute his mining operations and shall at any time during said remaining term of this agreement for a continuous period of one year fail to dig for, mine, raise and wash iron ore upon which royalty is payable as provided in this agreement, with the view of fully working said lands, then in that case, these presents and everything contained herein shall, at the option of the lessors, cease and be forever null and void, excepting as to the liability of the lessee herein. It is further understood and agreed that after the expiration of one year from the date of this lease, the lessee must mine and take away at least one thousand tons of iron ore annually or pay the royalty on that amount. It is also agreed and understood that any and all payments made by the lessee to the lessors of royalty upon iron ore not mined as above provided, shall be considered as payment in advance and that the lessee may deduct all such amounts or payments from iron ore subsequently mined and taken away by the lessee and on which royalty is payable under this lease."

The lessee entered into possession of the premises and made some explorations, but failed to commence and prosecute mining operations upon the premises. On April 6, 1905, he paid to the lessors $200, "being the minimum royalty due from April 20, 1904 to April 20, 1905." On July 13, 1905, the lessee paid to Jacob K. Spang $50.00, "quarterly royalty due under lease July 20, 1905." On the same day the lessors acknowledged the execution of the lease and had it recorded in the recorder's office of Berks county.

By a notice in writing dated August 19, 1905, the lessors notified the lessee "that mining operations were not actively commenced after .the year set from the date of said. agreement for exploring and digging for ore; and in view of the fact that you have failed to prosecute mining operations within a year from the date of the agreement, as well as that for a continuous period of one year you have failed to dig for, raise and wash iron ore, the undersigned lessors, according to the option given them under said lease, hereby desire to notify you that they now avail themselves of said option whereby said agreement, and everything contained therein, shall cease and be forever null and void; and now here notify you of their desire forthwith to repossess themselves of the said premises,

. . . . and that the agreement entered into April 20, 1903, between you and the undersigned, cease and be null and void from the date thereof."

By deed dated October 11, 1905, Sarah A. Spang and her husband conveyed the premises in fee to S. H. Chauvenet, the plaintiff, who shortly thereafter brought this action to enforce the forfeiture of the lease. On the trial of the cause in the court below the learned judge was of the opinion that the lessors had a right to exercise their option in declaring the lease void, and directed a verdict for the plaintiff. The defendants have taken this appeal.

The correctness of the judgment of the court below and the rights of the parties depend upon the contract of April 20, 1903. We must interpret the agreement so as to carry out the intention of the parties, if it can be gleaned from the instrument with the assistance of the law: 2 Snyder on Mines, sec. 1281. In such cases, the lease presupposes that the lessee will work the mine, and gives him the entire control over the premises: Koch's Appeal, 93 Pa. 434. Here, the purpose of the lessors in leasing the ore unquestionably was, as shown by the lease, "with the view of fully working said lands." It was not with the intention of securing a small rental or royalty on the ore and leaving it in place, but for the purpose of having the lands fully developed and realizing as speedily as possible on all the ore in the lands at the royalty named in the lease. Best, J., in Doe v. Bancks, 4 B. & Ald. 401, speaking of a forfeiture-bearing covenant in a mining lease, uses the following language which is pertinent and applicable here: "The rent was to depend upon the number of tons of coal raised. In order to derive any benefit from the mine, it was the object of the landlord, by introducing this clause, to compel his tenant to work it. The clause therefore was introduced solely for the benefit of the landlord, to enable him in case of a cesser to work, to take possession of the mines, and either work them himself, or let them to some other tenant. That, therefore, being the object of the parties in introducing this clause, I think it will be fully answered, by holding the lease to be void at the option of the landlord."

We have quoted at length the forfeiture-bearing clause of the lease involved in this controversy. It gives the lessee one

year to explore the premises for ore, and contains a covenant that immediately thereafter mining operations shall actively commence and that if the lessee fail to prosecute the operations and shall at any time during the remaining term of the agreement for a continuous period of one year fail to mine and raise ore upon which royalty is payable, " with the view of fully working said lands, everything contained herein shall, at the option of the lessors, cease and be forever null and void, excepting as to the liability of the lessee herein." This language is plain and comprehensive and leaves nothing in doubt. The duty of the lessee is clearly pointed out, and the rights of the lessors, on his failure to perform that duty, are plainly declared. During the first year after the execution of the agreement, the lessors had the privilege of exploring the premises. Then active mining operations were to commence and to be duly prosecuted. To enforce the covenant requiring the lessee to operate the mines, the stipulation was inserted authorizing the lessors to avoid the lease on the lessee's failing " at any time " to prosecute the mining operations for a continuous period of one year. It is manifest, therefore, that under this clause of the contract the lessors could forfeit the lease on failure to prosecute the work actively for one year. It is equally clear that, as the lessee has never commenced nor carried on mining operations, the lessors were at liberty to declare the lease forfeited and resume possession of the premises at the time notice to that effect was given, unless another part of the contract prevented the lessors from enforcing the forfeiture.

It is contended by the learned counsel for the appellants that a forfeiture is prevented by reason of the clause providing " that after the expiration of one year from the date of this lease, the lessee must mine and take away at least one thousand tons of ore annually or pay the royalty on that amount." It is claimed that payment under this clause of the contract relieves him from the duty of commencing or prosecuting mining operations upon the demised premises. It is urged by the appellants that this clause gave the lessee the privilege of paying a minimum royalty in lieu of prosecuting the mining operations, and that a compliance with it relieves him from his covenant to work the mines.

We think this contention is wholly untenable. It overlooks

the manifest purpose of the parties in entering into the lease as well as the explicit language of the instrument itself. It reads the minimum royalty clause as an alternative provision of the forfeiture-bearing clause. In other words, the appellants' contention is that the lessors can declare a forfeiture of the lease only if the lessee fails to prosecute mining operations at any time for the period of a year or fails to pay the royalty on 1,000 tons of ore annually. The position would be correct if the contract had provided that the failure to prosecute the mining operations should cause a forfeiture unless the lessee paid the minimum royalty. Such clauses are frequently inserted in oil and gas leases, and then of course the payment of the royalty relieves the lessee from the penalty of forfeiture, but this contract is not susceptible of that interpretation. The forfeiture-bearing clause was inserted expressly for the benefit of the lessors; and is enforceable at their option whenever the lessee fails to observe his covenant to prosecute mining operations "for a continuous period of one year." If he failed to prosecute the mining operations "with the view of fully working said lands," as required by the contract, the lessors then were authorized to declare a forfeiture of the lease. This gave them, at their option, authority to compel the lessee to develop or surrender possession of the mines. If, however, we are to read the minimum royalty clause, as contended by the appellants it should be read, then the provision inserted in the lease to enable the lessors to compel the lessee to observe his contract by "fully working said lands" is annulled, and the latter may remain in possession of the lessors' mines by simply paying a small annual rental or royalty and thereby depriving the lessors of having their mines fully developed and realizing upon the ore. That such was not the intention of the parties we think is too clear for argument. After the expiration of one year from the time in which the lessee had the right to explore the land, the lessors might at any time exercise their option to declare a forfeiture on failure of the lessee to prosecute the mining operations. They could, however, permit the lessee to remain in possession of the premises without carrying on the mining operations, and if they did so the lessee was required, as a consideration for the forbearance, to pay the minimum royalty provided in the contract, but the payment

of that royalty did not prevent their exercising the option to declare a forfeiture of the lease. As said in a standard work on the subject, the right of forfeiture was not abridged by the addition of a covenant to pay fixed damages for delay: Barringer and Adams on Mines, 149. The minimum royalty clause was simply a provision for the payment of a rental during the time the lessee failed to carry on mining operations until the forfeiture should be declared, and was clearly not a covenant requiring the lessee to do a certain amount of mining or pay a minimum royalty, and imposing the penalty of a forfeiture on failure to do one or the other. It should be observed that the contract does not authorize the lessors to forfeit the lease for refusing to pay royalty, but only for failing to prosecute mining operations for a continuous period of one year. The neglect to pay the minimum royalty was a breach of the lessee's covenant, but not a cause for forfeiting the lease. The payment of the royalty, therefore, has no bearing whatever upon the right of the lessors to declare a forfeiture of the lease. The right to forfeit the contract is wholly disconnected with the payment of the royalty, and is not affected by its payment or nonpayment. The right to exercise the forfeiture depends entirely upon another and different default by the lessee.

We do not agree with the contention of the appellants that the payment and receipt of the minimum royalty was a waiver of the forfeiture-bearing clause of the contract. So long as the lessee neglected to commence and carry on the mining operations, he was required, under the contract, to pay the royalty, and as often as it became due and payable the lessors could enforce its payment without affecting their right to subsequently declare a forfeiture of the lease. It was a consideration for the exercise by the lessors of forbearance to annul the lease, and became due at the times stipulated, "during said remaining term of this agreement." If at any time after the expiration of two years from the date of the lease, there had been any of the minimum royalty due, the lessors could have declared a forfeiture of the lease and also collected the amount of the arrears of royalty, as the lease specifically provides that at the option of the lessors it shall become void, "excepting as to the liability of the lessee herein." It is, therefore, clear that

the act of the lessors in declaring the lease void at any time, would not, by the express stipulation of the contract, relieve the lessee from the payment of arrears of minimum royalty, or from the performance of any other duty or act required of him by the agreement. The right and the authority to annul the lease were exclusively for the benefit of the lessors, and the lessee could in no way derive any advantage or be relieved from any duty imposed by the contract by the exercise of the lessors' option to nullify the lease. The royalty on the ore mined was, as we have seen, payable quarterly and the minimum royalty was payable in the same way. This was so understood by the lessee as appears by the receipt, accepted by him, for the $50.00 paid on July 13, 1905, as "the quarterly royalty due under the lease." This was the second payment made on the minimum royalty, and it was all due when paid.

The conditions permitting a forfeiture existed on August 19, 1905, when the lessors exercised their option and, by a notice in writing addressed to the lessee, declared the lease void. Until this declaration was made, and for a year immediately prior thereto, the lease was in full force and effect and hence the lessors were acting in strict compliance with the contract in declaring it void at that time. The English courts have passed upon this very question and sustained the view here taken. In Doe v. Bancks, 4 B. & Ald. 401, in the King's Bench, a lease of coal mines reserved a royalty rent for every ton of coal raised, and contained a proviso that the lease should be void, to all intents and purposes, if the tenant should cease working at any time for two years. After the working had ceased more than two years, the lessor received rent which, it was claimed, was a waiver of the forfeiture. It was held, however, "that a tenancy from year to year was not thereby created; for the lease was not absolutely void by the cesser to work, but voidable only at the option of the lessor, and that he might avoid the lease upon any cesser to work commencing two years before the day of demise in the ejectment." ABBOTT, C. J., said (p. 406): "There is no distinction between the very day after the receipt of the rent and the period of a week or month. I am of opinion that the legal effect of this instrument is that it is voidable only at the election of the landlord, and that he is at liberty to make the lease void at the end

of any two years, during which two years there had been a continued cesser to work." The same doctrine was announced in Doe v. Baker et al., 5 Welsby, Hurlst. & Gordon, 498, where it was held that the receipt of rent is no waiver of a continuing breach of covenant. In that case a lessee was bound under penalty of forfeiture to repair within a reasonable time. After breach the lessor accepted rent, but it was held that the reasonable time for reparation did not commence afresh after such acceptance of rent. In Taylor's Landlord and Tenant, sec. 500, the learned author, citing numerous cases sustaining the doctrine, says : " Where there is a continuing cause of forfeiture, the landlord will not be precluded from taking advantage of it by receiving rent which accrued after the breach was originally committed."

Here the cause of forfeiture continued until the declaration by the lessors. So long as the lease remained in force and the lessee failed to prosecute the mining operations, the cause of forfeiture continued and the lessors had the option of declaring it void. The receipt of the rent in the meantime did not affect this right, and the only way that the lessee could prevent the lessors from annulling the lease was to observe the contract on his part and prosecute mining operations with the diligence contemplated by the agreement.

The appellants in this case have no equity to support their position. It tends to obstruct and prevent the development of the mineral resources of the state. The lessee is not acting in good faith in not proceeding to prosecute mining operations as was contemplated by both parties when they executed the lease. In Munroe v. Armstrong, 96 Pa. 307, an ejectment to enforce a forfeiture-bearing clause in a lease, this court said (p. 310) : " Holding on to a lease after ceasing search is often for purposes of speculation, the thing which a prudent landowner guards against. Forfeiture for non-development or delay is essential to private and public interests in relation to the use and alienation of property. In such cases as this equity follows the law. In general, equity abhors a forfeiture, but not when it works equity and protects a landowner from the laches of a lessee whose lease is of no value until developed, except for a purpose foreign to the agreement." In the recent case of Steelsmith v. Gartlan, 44 L. R. A. 107, the supreme

court of West Virginia, in disposing of a controversy over a
lease, quotes with approval this language of Munroe v. Arm-
strong. In discussing the conduct of a lessee in a mining lease,
the court of appeals of New York in Genet v. Delaware and
Hudson Canal Company, 19 L. R. A. 127, said (p. 133) : "The
conduct of the defendant has been entirely subversive of the
spirit of the contract, and of the object and purpose for which
it was entered into. The execution of the contract in good
faith was fully contemplated. The defendants have acted as
if a minimum rent was in the nature of an annual bonus paid
to the plaintiffs merely to keep the property out of the market,
or to prevent it falling into the hands of a rival. They cer-
tainly have no right to make any such use of the contract, as
that would be to ignore its essence and destroy its life."

The remarks of the court in the cases cited are pertinent to
the facts of the case in hand. The learned trial judge correctly
interpreted the lease involved in this suit, and committed no er-
ror in directing a verdict for the plaintiffs.

The assignments of error are overruled, and the judgment is
affirmed.

ELKIN, J., dissents.