## DUNCAN *et al. v.* CAMPBELL.

1. Grounds of a motion for new trial which complain of the admission of evidence, and which do not set forth such evidence literally or in substance, raise no questions for decision by this court. *Rucker* v. *State,* 97 *Ga.* 205 (22 S. E. 921); *Denton* v. *Ward,* 112 *Ga.* 532 (37 S. E. 729); *Crozier* v. *Goldman,* 153 *Ga.* 162, 164 (111 S. E. 666). This ruling disposes, adversely to the defendants, of grounds 4 and 6 of the amendment to their motion for new trial.

2. A ground of a motion for new trial, excepting to the admission in evidence of a deed between one of the defendants and third parties, which does not set forth literally or in substance the contents of the deed, but only refers to it as set forth in an exhibit attached to the brief of evidence, will not be considered by this court. *McMichael* v. *Atlanta Envelope Co.,* 151 *Ga.* 776 (3) (108 S. E. 226). This disposes, adversely to the defendants, of ground 5 of the amendment to their motion for new trial.

3. The court erred in charging the jury as follows: "In the event you reach the conclusion, under the law as given you in charge by the court, applied to the facts in evidence in this case, that Campbell ceased to do any work on the leased premises on the 8th day of May in the year 1919, and did not return there until the first day of June, 1920, then the court charges you that under those circumstances your verdict should be in favor of Duncan, finding that Campbell had forfeited his rights under that lease contract. If, on the other hand, you reach the conclusion that Campbell, or his agents, were in possession of the property on the 13th day of June in the year 1919, and that he returned there on the first day of June, 1920, to continue operations, but Duncan refused to let him function under that contract, if you reach that conclusion in the case, the court charges you your verdict should be in favor of Campbell upon the issue his rights were not forfeited."

4. Where the owner of lands leased to another all the clay and minerals of every kind therein for a term of ninety years, in consideration of the sum of twenty-five cents for each and every ton of clay and minerals mined and shipped from said lands, payments to be made each Saturday for shipments for the previous week; and where it was stipulated in the lease that should the lessee fail to pay to the lessor the said royalty of twenty-five cents per ton as above specified, then the lease was "to be null and void and of no force and effect;" and where the lease contained this provision, to wit: "It is also agreed that if the mining, treating, and shipping of clay should stop at any time within the life of this lease for a period of one year, then this lease is to be void and to revert to the heirs or owners, but the heirs or owners are not to have any interest or claim on any improvements, buildings, machinery, etc., unless the same are not removed within one year from the forfeiture of this lease," *Held:* (*a*) the failure of the lessee to mine, treat, and ship clay from the leased premises for a period of one year worked a forfeiture of this lease; and the mere mining and treating of clay alone, without shipping any of it, were not sufficient to defeat

such forfeiture.  (b) The failure of the court to give to the jury an instruction embodying the above principle was error.

5. When on April 20, 1918, the day the lease was executed, although dated July 27, 1917, the lessee agreed in writing to pay to the lessor the sum of $200 on or before May 3, 1918, or on the day he began operations under said lease, and further agreed to pay to the lessor at the rate of $50 per month for each month after May 3 until operations began; and where on February 13, 1919, the lessee paid to the lessor the sum of $350, the former taking from the latter a receipt reciting that said sum was in full payment of royalty for clay on the leased premises, subject to the lease of July 27, 1917, and further reciting that said agreement of April 20, 1918, was satisfied in full and was to be cancelled of record, the said agreement and the receipt of the money thereunder do not constitute a waiver of the right of the lessor to declare the lease forfeited, where the lessee failed after February 2, 1919, for a period of one year, to mine, treat, and ship clay from the leased premises.

6. The verdict is contrary to law and to the evidence.

No. 3310.  January 23, 1923.

Equitable petition.  Before Judge Park.  Wilkinson superior court.  June 10, 1922.

*John S. Davis* and *Evans & Evans,* for plaintiffs in error.

*George H. Carswell* and *Victor Davidson,* contra.

Hines, J.  1. None of the headnotes require any elaboration except the third, fourth and fifth.

2. The lease between the parties was for ninety years.  It provided for the payment by the lessee to the lessor of 25 cents per ton for each and every ton mined and shipped from the leased premises during the life of the lease; and that, if the lessee failed to pay said royalty of 25 cents per ton as above specified, then the lease to be null and void and of no force and effect whatever. Payments for clay mined and shipped from the premises were to be made on each Saturday for the previous week.  The lease provided that " if the mining, treating, and shipping of clay should stop at any time within the life of this lease for the period of one year, then this lease is to be void."  It is insisted on behalf of the lessee, that, under this provision for forfeiture, there could be no forefeiture if the lessee mined or treated clay, although he may not have shipped any clay for a period of one year during the life of the lease.  The lessor insists that the failure of the lessee to do all three of these things, and especially his failure to ship any clay from the leased premises for the period of one year, would work a forfeiture of this lease.  What is the proper construction of this stipulation?

The lease contract, like all others, must be construed according to the intention of the parties and with reference to the subject-matter. *Alexander* v. *Dorsey,* 12 *Ga.* 12 (56 Am. D. 443); *Snook & Austin Furniture Co.* v. *Steiner,* 117 *Ga.* 363, 373 (43 S. E. 775). Can the lessee defeat forfeiture by either mining or treating clay? Can he defeat forfeiture by mining alone, or by mining and treating without shipping clay? It is said that the forfeiture can only result from his failure to do the three things mentioned in this stipulation, and that if the lessee does any one of them he does not fail in doing all three of them, and that in consequence no forfeiture could result. We do not think that this is the proper construction of this stipulation. It was inserted in the lease wholly for the benefit and protection of the lessor. Wills *v.* Manufacturers Natural Gas Co., 130 Pa. 222 (18 Atl. 721, 5 L. R. A. 603). In arriving at the true meaning of this provision in the lease, we must look to the object which the parties had in view. The rent depended upon the number of tons of clay which were mined, treated, and shipped. For the landlord to get any benefit from the mine, the tenant had to dig, treat, and ship clay or other minerals. If the lessee merely mined clay, or mined and treated clay, the landlord would get no rent or compensation. The purpose of the stipulation was to compel the lessee to mine, treat, and ship clay or other minerals, in order that the lessor might receive his royalty of 25 cents per ton for each ton mined, treated, and shipped. All three things had to be done under this lease before the lessor was entitled to payment of his royalty. Payments were to be made only when clay was shipped. We must give to this stipulation such construction as will carry out the manifest intention of the parties to the instrument, and effectuate the clear purpose and intent of this provision of the lease. The clear purpose of this stipulation was to compel the lessee to mine, treat, and ship clay, in order that the lessor might get his reserved rent. To place upon this provision the construction the lessee insists upon would lead to its unreasonable interpretation. It would make this provision, which was intended for the protection of the lessor and for the purpose of compelling the lessee to ship clay in order that the mine might become remunerative to the lessor, an instrument by which these purposes would be partially or entirely defeated. It would permit the lessee, during the long life of this

lease, to mine clay and other minerals, or to mine and treat, without shipping any, for any length of time he desired, and thus deprive the lessor of all compensation from the mining operations during the period of postponed shipments. So we are of the opinion that the lessee, under this provision, forfeited his lease if he did not ship clay for the period of one year.

What is the effect of the breach of this stipulation by the lessee? It is urged by able counsel for the lessee that this stipulation is a condition subsequent, for breach of which the lessor can only resort to his claim for damages. It is true " the law inclines to construe conditions to be subsequent rather than precedent, and to be remediable by damages rather than by forfeiture." Civil Code (1910), § 3717. But where the parties expressly stipulate for forfeiture for breach of covenant, and where precise compensation can not be made for such breach, the forfeiture will be enforced. Where the forfeiture works equity and protects the landlord against the laches of the lessee, the forfeiture will be enforced where the lease is of no value to the landlord until developed. Munroe v. Armstrong, 96 Pa. 307. While equity generally abhors a forfeiture, it does not do so when it is equitable and just, and when the enforcement of the forfeiture is the only means of protecting the landowner against the laches of his lessee, and where the lease is of no value to the landowner until developed. Steelsmith v. Gartlan, 45 W. Va. 27 (29 S. E. 978, 44 L. R. A. 107) ; Chauvenet v. Person, 217 Pa. 464 (66 Atl. 855, 11 L. R. A. (N. S.) 417) ; Genet v. Del. & H. Canal Co., 136 N. Y. 593 (32 N. E. 1078, 19 L. R. A. 127). In Doe v. Bancks, 4 Barn. & Ald. 401 (see 5 L. R. A. 604), Best, J., said: " In construing this clause of the lease we must look to the object the parties had in view. The rent was to depend upon the number of tons of coal raised. In order to derive any benefit from the mine, it was the object of the landlord by introducing this clause to compel the tenant to work it. The clause therefore was introduced solely for the benefit of the landlord, to enable him in case of a cesser to work, to take possession of the mines and either to work them himself or let them to some other tenant. That, therefore, being the object of the parties in introducing the clause, I think it will be fully answered by holding the lease to be void at the option of the landlord."

Provisions for forfeiture in ordinary leases have always been strictly construed by both courts of law and equity. Jenkins *v.* Jenkins, 63 Ind. 415 (30 Am. R. 229); Jackson *v.* Brownwell, I Johns. (N. Y.) 267; Jackson *v.* Topping, 1 Wend (N. Y.) 388 (19 Am. D. 515); Westmoreland &c. Co. *v.* DeWitt, 130 Pa. 235 • (18 Atl. 724, 5 L. R. A. 731). When, however, the parties have made an express stipulation which will admit of but one construction, not to give effect to it would be to make a new contract for the parties, instead of construing and enforcing that which they had made for themselves. In leases of lands for mining purposes, where the rent reserved is a royalty, the courts do not hesitate, but look with favor upon provisions for forfeiture for non-exploitation. Huggins *v.* Daley, 99 Fed. 606 (40 C. C. A. 12, 48 L. R. A. 320). Such a covenant is a condition the breach of which works a forfeiture. Civil Code (1910), § 3721.

This case does not come within the class of cases where a court of equity, on the lessor's application, declines to cancel, during the term, a mining lease for mere delay in paying rent, and for failure to commence operations at the time stipulated, where the lessee is ready and willing to pay the rent, and to perform his covenant to open and operate the mine (Pheasant *v.* Hanna, 63 W. Va. 613, 60 S. E. 618); nor within the class of cases where a court of equity will never enforce a technical forfeiture, where no substantial pecuniary injury has resulted to the lessor (Craig *v.* Hukill, 37 W. Va. 520, 16 S. E. 363, Spies *v.* Arvondale &c. R. Co., 60 W. Va. 389, 55 S. E. 464); nor within that class of cases where equity will relieve the tenant against an inequitable forfeiture (12 Am. & Eng. Enc. Law, 739); nor within that class of cases where equity will, where the breach is not wilful, relieve against a forfeiture or penalty, where the stipulation is intended as mere security for the payment of money, and precise financial compensation can be made. Davis *v.* West, 12 Ves. 475; Garner *v.* Hannah, 6 Duer, 273.

3. But it is insisted, that, under the contract of April 20, 1918, by which the lessee agreed to pay the lessor $200 on May 3, 1918, and to pay the sum of $50 per month as royalty on the clay for each month until he began operations, and where on February 13, 1919, the lessee paid the lessor the sum of $350 in full payment of royalty for this clay, the lessor waived the forfeiture of this lease

for breach of this covenant. This clearly would constitute a waiver of this forfeiture up to the date of this payment; but this payment was made and received expressly subject to the lease, and the contract for the payment of $50 per month until operations under the lease were begun was expressly satisfied in full and canceled. Thereafter the parties were remitted to their rights and obligations under the lease. Under such circumstances, the receipt of said payment did not amount to a waiver of future forfeiture for breach of this covenant. Chauvenet v. Person, supra.

4. In view of the above rulings, the court below erred in the charge set out in the third headnote; and the verdict is contrary to the law and evidence.

*Judgment reversed. All the Justices concur.*