## 51109. DODSON v. KERN et al.

MARSHALL, Judge.
This appeal results from a judgment entered upon

a directed jury verdict for the defendants below at the close of plaintiff's case.

Appellant Dodson is engaged in the logging business. In 1972, appellant was possessed of 131 acres of real estate, more or less, for which he paid $1,000 an acre. In that same year he sold most of this acreage in smaller parcels for a price of $1,000 an acre. He sold approximately 10 acres to the appellees, Mr. and Mrs. Kern, defendants below, as well as a larger parcel of contiguous land to the Putnam County Board of Education. The deed of sale to the Kerns was dated July 20, 1972, and contained the following provision: "The grantor herein [Dodson] reserves the right to cut the timber on the above described property; said reservation to be a period of six months from the date of this deed." Thus, in accordance with the express written terms of the deed, the timber reservation had to be exercised not later than January 20, 1973.

Appellant caused a logging crew to commence cutting the timber on the adjacent board of education property sometime after the mentioned 10 acres had been deeded to the Kerns. The evidence is most ambiguous as to when this logging operation occurred. The foreman in charge of the operation could not remember the period of time at all. Another employee believed the operations in question occurred about a year before the time of the trial of this case (October, 1974). If his evidence were accepted, it would place the logging as occurring in the fall of 1973, or as the witness stated, "It was kind of the fall of the year. It was cool." The appellant believed his crews were cutting timber on the board of education property in the fall of 1972, within a few weeks of the transfer of the 10 acres to the Kerns.

The evidence further reflects that as the logging crew moved close to the Kerns' property line, appellee Mr. Kern, approached appellant's foreman and requested that the crew wait to cut timber on appellees' property until ". . . he and Jim [appellant Dodson] could get together on it." The foreman relayed this information to appellant. Appellant directed his crew not to cut any timber on Kerns' property. He stated that the reason he did not cut any timber at that time was because "Mr.

Kern asked me to leave the timber and he would pay me for it." Subsequently, appellant approached appellees and asked for the payment of $10,000 for the timber. He demanded that sum because he believed the Kern acreage would yield approximately $1,000 of timber per acre, inasmuch as the adjacent board of education property had had that much yield. Appellee refused to pay the demanded sum and further refused to allow appellant to enter upon the 10 acres to cut the timber standing thereon. The reason for this refusal was that the six-month reservation had expired.

Appellant maintains appellee offered to buy the standing timber rather than have appellant's crew cut it, and he relied upon that offer to buy the timber by keeping his crew off of the Kerns' 10 acres. It is his contention that Mr. Kern defrauded him by lulling appellant into waiting until the six months had passed and then denying appellant the timber or its cash equivalent. He further alleges appellees should be estopped to deny the obligation to pay for the timber or, in the alternative, to allow appellant the opportunity to enter upon the land and harvest the timber reserved.

The facts indicate there was no written document between appellant and appellees as to the agreement to purchase the timber. Appellant said he relied on the word of Mrs. Kern, a lady of that county whom he had known a long time, though the described dealings were between himself and Mr. Kern. Appellant was satisfied as to the value of the timber on the Kerns' land but told Mr. Kern to get a timber man to appraise the timber. They would then arrive at a money figure. Appellant said he would sell the timber at "market price." Appellant never discussed price with the Kerns, relying upon them to "come up with that figure." There were no details as to when the sale was to be consummated, upon what terms, at what time "market value" was to be determined or other understandings between the parties. The first time a specific figure was mentioned was when appellant demanded $10,000, a figure unilaterally determined and apparently never agreed to by appellees.

Following the development of the preceding factual background, and upon the resting of the plaintiff's case,

appellees moved for a directed verdict upon the grounds that the verbal discussions were nothing more than a proposal and the original contract was the effective determinant between the parties. Upon the grant of the requested directed verdict, this appeal followed. *Held:*

An analysis of the facts establishes the initial intent of the parties. By the deed of July 20, 1972, Dodson intended to convey to the Kerns approximately 10 acres of land. This land contained timber which Dodson reserved to himself, intending to harvest the same since his primary business interest was logging and not real estate. Nevertheless, it clearly also was the intent of the parties that Dodson had to exercise the timber reservation within six months of the date of the deed, or by January 20, 1973. If the timber had not been harvested by that latter date, then by the express terms of the deed the timber became the property of the Kerns without the payment of further consideration, none being mentioned in the deed. Appellant conceded at the trial that if the conversations between the Kerns and himself occurred after January 20, 1973, he, appellant, would have no cause of action.

It is manifest from the transcript that when considering the motion for directed verdict, both parties to the trial as well as the court, assumed the discussions concerning the purchase of the standing timber occurred prior to the expiration of the six-month reservation. We, too, will make that assumption. In view of the trial court's conclusion that only preliminary negotiations were undertaken by Dodson and the Kerns without the formulation of a binding agreement, it was not necessary to consider any dispute in the evidence as to when these discussions actually occurred.

We also agree with the trial court that no binding oral contract modifying the timber reservation clause in the deed was ever consummated between appellant and appellees. "The first requirement of the law relative to contracts is that there must be a meeting of the minds of the parties, and mutuality [cits.], and in order for the contract to be valid the agreement must ordinarily be expressed plainly and explicitly enough to show what the parties agreed upon. [Cits.] A contract cannot be enforced

in any form of action if its terms are incomplete or incomprehensible." *West v. Downer,* 218 Ga. 235, 241 (127 SE2d 359). Nowhere in this transcript is there any evidence or other statements of clarity or reasonable certainty as to what Dodson and the Kerns were obligating themselves to do. "The consent of the parties being essential to a contract, until each has assented to all the terms the contract is incomplete. Until assented to, each party may withdraw his proposition. [Cit.] If there is a proposition but it is not accepted, no binding contract results. [Cit.] The acceptance must be unequivocal and unqualified. [Cit.] The offer can be accepted only by the person or persons to whom it is made. [Cit.]" *Milner Hotels v. Black,* 196 Ga. 686, 691 (27 SE2d 402). The trial court did not err in concluding there was no binding agreement which extended or modified the express terms of the six-month timber reservation contained in the deed of July 20, 1972.

Appellant does not contend that he either made a formal demand for the "market value" of the standing timber, or in lieu thereof, the right to enter upon the Kerns' property and harvest the timber within a period of six months after July 20, 1972. However, he maintains that the Kerns should be estopped from denying him the value of the timber or the timber itself in view of their allegedly fraudulent conduct in inducing him to delay the harvest of the timber beyond the six-month reservation period by promises to buy the timber from him. Apparently appellant contends that once the Kerns mentioned a desire to purchase the timber, it was their obligation to pursue the purchase negotiations expeditiously. He apparently expected appellees to announce all the details of the purchase to include price, mode of payment, the hiring of an appraiser and any other acts necessary to effectuate the sale. Yet the Kerns automatically became vested with title to the timber if appellant did not claim it within six months. The time limits were imposed not on the Kerns but upon appellant. "Provisions for forfeiture in ordinary leases have always been strictly construed by both courts of law and equity. [Cit.] When, however, the parties have made an express stipulation which will admit of but one construction, not

to give effect to it would be to make a new contract for the parties, instead of construing and enforcing that which they had made for themselves. In leases of lands for mining purposes, where the rent reserved is a royalty, the courts do not hesitate, but look with favor upon provisions for forfeiture for nonexploitation." *Duncan v. Campbell,* 154 Ga. 824, 828 (115 SE 651).

Should appellees have been estopped? "According to Lord Coke, an estoppel is where a man is concluded by his own act or acceptance to say the truth. It is not the office of estoppel to work a positive gain to another. Its exclusive function is to protect him from injury which, but for the doctrine, he must necessarily suffer . . . Mere silence will not work an estoppel. The 'standing by' must be under such circumstances as not only to afford an opportunity to speak, but also to create a real or apparent duty to speak. So-called constructive fraud is the basis of an estoppel by silence." *Bank of Lumpkin v. Bank of Stewart County,* 20 Ga. App. 1, 8 (92 SE 778).

We believe the duty to pursue the oral offer made by the Kerns and reduce that offer to a binding agreement so as to extend or modify the six-month reservation prior to the expiration of the six months lay on appellant, not on the appellees. Under the circumstances of this case, we think appellant was a victim of his own credulity and negligence. *Hays v. McGinness,* 208 Ga. 547, 550 (67 SE2d 720). Accordingly, we find that appellant failed to exercise reasonable diligence in cutting the timber within the six-month time frame or in perfecting a modification of that reservation. The trial court did not err in directing a verdict for appellees. *Travelodge Corp. v. Carwen Realty Co.,* 223 Ga. 821, 824 (158 SE2d 378).

*Judgment affirmed. Bell, C. J., and Webb, J., concur.*

SUBMITTED SEPTEMBER 17, 1975 — DECIDED
NOVEMBER 12, 1975.

*D. D. Veal,* for appellant.
*Milton F. Gardner,* for appellees.