67077. ADAMS v. NORTH AMERICAN BUSINESS BROKERS, INC. et al.

DEEN, Presiding Judge.
After responding to a newspaper advertisement of North American Business Brokers, Inc. ("broker") concerning business

opportunities, Adams entered discussions with the broker about purchasing a franchise for a Hungry Bull Family Steak House Restaurant from Hungry Bull Universal, Ltd. ("Hungry Bull"). On or about July 3, 1981, Adams submitted a franchise application and a financial statement, and on July 24, 1981, he paid $7,500 to the broker as earnest money on the purchase of the franchise. Hungry Bull found Adams' financial status acceptable for a franchisee, and on August 17, 1981, the parties executed the franchise agreement. At that time Adams paid Hungry Bull $15,000 for the franchise rights. (In conjunction with these negotiations, Adams hired the broker to sell his successful sandwich shop, for which he eventually paid the broker a $10,000 commission.)

The franchise agreement specifically provided that the selection of the franchise location and construction of the premises, while subject to the approval of Hungry Bull, were the responsibilities of the franchisee, Adams. The agreement further provided that "[s]ince North American Business Brokers, Inc., will be doing a great deal of screening of prospective franchise people, as well as assisting any possible franchise prospects that they are dealing with obtaining financing or lease back situations where the individual does not have adequate funds to purchase the land and build his own restaurant, there will be a certain amount of expense involved on the part of North American Business Brokers, Inc., and therefore in th[ese] particular counties any franchisee that is recruited by North American Business Brokers, Inc., for Hungry Bull Universal, Ltd., will be paying an additional seven thousand and five hundred dollars ($7,500.00) fee directly to North American Business Brokers, Inc. ...." The agreement also stated that the "Franchisor does not make any representation or warranty as to the potential success of the business venture contemplated hereby," and contained a typical merger clause declaring the written franchise agreement to be the entire agreement of the parties.

Subsequent to the execution of the agreement, Adams expressed interest in approximately 4 locations to the broker, but either the broker was unable to find a developer willing to build the restaurant on these locations, based on Adams' financial statement, or the property was unavailable. The broker also contacted Adams about a location between Stone Mountain and Snellville, but Adams did not think the location was promising for business at lunch. One other location, which would have involved converting a building which formerly housed another steak house franchise, was submitted for and met the approval of Hungry Bull, but Adams was unable to reach an acceptable leasing arrangement with the property's owner.

In early January 1982 Adams, disgruntled over still not being in operation of his franchise, verbally requested refund of his initial $22,500 investment. He later demanded such a refund in writing, but the broker and Hungry Bull refused. Adams then commenced this action, alleging fraud, breach of contract, and negligence. From the trial court's grant of summary judgment for the broker and Hungry Bull on the count alleging breach of contract, Adams appeals, contending that summary judgment was improper because parol evidence would be admissible at trial to show that the true intent of the parties in the franchise agreement was that the broker and Hungry Bull would secure a builder and location for Adams. *Held:*

OCGA § 13-2-2 (1) (Code Ann. § 20-704) provides that "[p]arol evidence is inadmissible to add to, take from, or vary a written contract. All the attendant and surrounding circumstances may be proved and, if there is an ambiguity, latent or patent, it may be explained . . ." Generally, all prior and contemporaneous oral agreements between contracting parties are merged into the written contract which purports to be the entire agreement of the parties, although a distinct, collateral oral agreement which is not inconsistent with the written contract may still be proven. *S. & S. Builders v. Equitable Investment Corp.,* 219 Ga. 557 (134 SE2d 777) (1964); *Taylor Freezer Sales Co. v. Hydrick,* 138 Ga. App. 738 (227 SE2d 494) (1976).

Adams contends that from the outset of the negotiations both the broker and Hungry Bull assured him that he would be in operation of his restaurant within 6 months, and that he understood the franchise agreement to be contingent upon that timely opening. Because the written contract contains no such contingency, Adams argues that this aspect of the agreement may be proven by parol evidence because an ambiguity exists in the contract provision in which the broker promised to assist prospective franchisees with obtaining financing or lease back arrangements. We, however, find no ambiguity.

Generally, words in a contract must be given their usual and primary meaning at the time of the execution of the contract. OCGA § 13-2-2 (2) (Code Ann. § 20-704); *Asa G. Candler, Inc. v. Georgia Theater Co.,* 148 Ga. 188 (96 SE 226) (1918); *Henderson v. Henderson,* 152 Ga. App. 846 (264 SE2d 299) (1979). Adams seeks imposition of a special definition of the word "assist" developed by the world of sports, whereby the broker and Hungry Bull would get credit for assisting Adams obtain financing or a lease back arrangement only upon the actual obtaining of such. The sports world's special definition, however, has not yet become the usual and

primary meaning of the word "assist."

The only evidence of record establishes without question that the broker and Hungry Bull did assist Adams in trying to find a location and builder for the restaurant. It is equally clear that under the franchise agreement, Adams bore the risk of failure of the franchise. It appears that Adams was steered astray not by Hungry Bull or the broker or an ambiguity, but by his failure to protect himself in the franchise agreement by bargaining for some refund upon his inability to secure a restaurant. Because there was no genuine issue of material fact that the broker and Hungry Bull performed under the contract, the trial court properly granted partial summary judgment on that count.

*Judgment affirmed. Banke and Carley, JJ., concur.*

DECIDED OCTOBER 6, 1983.

*Luke Frank Gore, Roger L. Curry,* for appellant.
*Eugene Novy, Penelope W. Rumsey,* for appellees.