A02A1529. TENCH v. GALAXY APPLIANCE & FURNITURE SALES, INC.

(567 SE2d 53)

ELDRIDGE, Judge.

This pro se appeal arises from a jury verdict and judgment in a declaratory judgment action finding that Galaxy Appliance & Furniture Sales, Inc. (Galaxy) owns the one-half undivided interest in the store property titled in the name of Burlin J. Tench, deceased. Such judgment ordered the Clerk of the Superior Court of Stephens County to place on the face of the executrix deed from Pauline C. Tench as executrix of the Last Will and Testament of Burlin J. Tench to herself as heir:

THIS DEED IS CANCELED, SET ASIDE, AND DECLARED NULL AND VOID BY VIRTUE OF AN ORDER OF THE SUPERIOR COURT OF STEPHENS COUNTY, GEORGIA, IN CIVIL ACTION 00-CV-241W, SAID ORDER BEING DATED THE ___ DAY OF OCTO-BER, 2001, AND A COPY THEREOF BEING RECORDED IN DEED BOOK ___, PAGES ___, STEPHENS COUNTY DEED RECORDS.

Such judgment further ordered that across the face of the deed from Steve Chitwood to Burlin J. Tench, dated September 1976, recorded in Deed Book 133, page 779, Stephens County Records the following be placed:

A ONE-HALF UNDIVIDED INTEREST IN THE PROP-ERTY DESCRIBED IN THE WITHIN DEED WAS DECLARED TO BE THE PROPERTY OF GALAXY APPLI-ANCE AND FURNITURE SALES, INC. BY VIRTUE OF AN ORDER OF THE SUPERIOR COURT OF STEPHENS COUNTY, GEORGIA, IN CIVIL ACTION 00-CV-241W, SAID ORDER BEING DATED THE ___ DAY OF OCTO-BER, 2001, AND BEING RECORDED IN DEED BOOK ___, PAGES ___, STEPHENS COUNTY DEED RECORDS.

Pauline C. Tench, individually and as executrix of the Estate of Bur-lin J. Tench, deceased (the Estate), who was represented at trial, appeals pro se. Finding no error, we affirm.

In 1975, Thomas LeCroy and Burlin J. Tench formed a partner-ship to run a furniture and appliance business. In 1976, Tench pur-chased the land and store where he started Galaxy. In 1979, Tench had the business incorporated; however, no deed was made for the land and building to the corporation. In 1980, Galaxy borrowed $115,000. Also at the same time in 1980, Tench conveyed to LeCroy a

one-half undivided interest in the land and building and one-half of the stock in the corporation; together, LeCroy and Tench co-signed the corporate note for the $115,000 and pledged as security for the corporate note the building and land, as well as their homes. A security deed conveying all three parcels of improved realty was given by them to the bank, leaving Galaxy, LeCroy, and Tench with equities of redemption.

On June 2, 1986, LeCroy and Tench entered into a stockholders agreement at the time insurance policies were purchased on each other's lives. Each owned $120,000 in life insurance on the other's life. The agreement provided that the survivor was to pay the other's widow $30,000 for one-half the Galaxy business. By oral agreement, with mutual promises given in consideration, the balance of $90,000 was to be used to pay the note and other debts of Galaxy and would release each other's home from the corporate debt. They further agreed that the survivor would own the business, building, and land.

In 1994, Tench died and his widow received $30,000 for his interest in the corporation and land. LeCroy used the entire balance of the insurance to pay off the note and other debts of Galaxy. In July 1994, LeCroy and Galaxy released Pauline Tench and the Estate from all debts or claims by Galaxy or its creditors.

LeCroy believed that title to the land and building had been transferred to Galaxy, and subsequently, the corporation paid all ad valorem taxes and insurance on the building and land. Galaxy continued to occupy the building without claim from Pauline Tench or the Estate for rent; however, in 1999, LeCroy discovered that the building was not titled in Galaxy and sought a quitclaim deed from Pauline Tench and the Estate. The quitclaim deed was refused. As a consequence, LeCroy commenced this declaratory judgment action.

As a pro se appeal, the enumerations of error were filed long after the brief and are vague; the brief does not cite to the record. The citation of authority and argument are short and unenlightening.

1. Pauline Tench contends that the trial court erred because Galaxy's attorney was allowed to use a chart before the jury which had not been made available to Tench during discovery. We do not agree.

The brief does not refer to the trial transcript to identify what "chart" Tench refers to and how such objection was preserved as to the chart's use before the jury. Since no chart is shown as having been admitted into evidence as a trial exhibit, then the chart must have been used as "demonstrative evidence" only.

(a) Under OCGA § 9-10-183, trial counsel may use blackboards, charts, or models for demonstrative purposes in opening statement, presentation of evidence, and argument for purposes of illustrating the contentions in the case. Counsel are given wide latitude in use of

demonstrative aids at trial to assist the jury in understanding the issues that they must decide.

> In the trial of any civil action, counsel for either party shall be permitted to use a blackboard and models or similar devices in connection with his argument to the jury for the purpose of illustrating his contentions with respect to the issues which are to be decided by the jury, provided that counsel shall not in writing present any argument that could not properly be made orally.

OCGA § 9-10-183; *Oglethorpe Power Corp. v. Sheriff*, 210 Ga. App. 299, 303 (6) (436 SE2d 14) (1993) (use of charts during closing argument); *Lewyn v. Morris*, 135 Ga. App. 289, 290 (1) (217 SE2d 642) (1975) (use of a blackboard to diagram positions of vehicles in opening statement). "The trial court has discretion in the control of such matters; [Tench] has failed to show an abuse of that discretion." *Oglethorpe Power Corp. v. Sheriff*, supra at 303 (6). However, the trial court should not prohibit what a party has a statutory right to do. *Lewyn v. Morris*, supra at 290.

(b) Further, failure to respond to proper discovery will not cause the exclusion of evidence at trial. "Exclusion of probative trial evidence is not an appropriate remedy for curing an alleged discovery omission. *White v. Lance H. Herndon, Inc.*, 203 Ga. App. 580, 581 (5) (417 SE2d 383) [(1992)]." *Hunter v. Nissan Motor Co. &c.*, 229 Ga. App. 729 (1) (494 SE2d 751) (1997). Prior to and at trial, postponement, recess, continuance, and mistrial constitute proper remedies for discovery abuse revealed at trial and not the exclusion of probative evidence. *Nathan v. Duncan*, 113 Ga. App. 630, 638-641 (7) (149 SE2d 383) (1966). Prior to trial a number of sanctions are available to the trial court to deal with discovery abuse, including striking the answer and entering a default or dismissing the complaint. *Riches to Rags v. McAlexander & Assoc.*, 249 Ga. App. 649, 652 (549 SE2d 474) (2001); *Kemira, Inc. v. Amory*, 210 Ga. App. 48, 51-52 (1) (435 SE2d 236) (1993); *Roderiquez v. Saylor*, 190 Ga. App. 742, 743-744 (1) (380 SE2d 339) (1989).

The trial court did not abuse its discretion in allowing Galaxy to use demonstrative evidence not previously revealed to Tench in discovery.

2. Tench contends that jury misconduct occurred during the trial, requiring a new trial. We do not agree.

In her brief, Tench contends that, after trial, her lawyer talked to a juror who told him that another juror talked to an unidentified member of the LeCroy family about the case and that the other juror shared such biased information with the other jurors. The juror

refused to give an affidavit attacking the verdict. Therefore, Tench's lawyer refused to file a motion, and the trial judge refused to discuss the case with her, stating that he would discuss the case only with both trial counsel. Thus, no objection was timely made or ruled upon by the trial court.

(a) Tench did not file a motion for new trial and did not have as a special ground the alleged jury misconduct. Therefore, the objection was not preserved on the record for consideration on appeal; further, such objection was never passed upon by the trial court. An error cannot be raised for the first time on appeal and will not be considered by this Court. *Dortch v. Atlanta Journal &c.*, 261 Ga. 350, 352 (4) (405 SE2d 43) (1991); *Vickers v. Coffee County*, 255 Ga. 659, 661 (340 SE2d 585) (1986).

(b) Further, had the issue been properly preserved by timely motion for new trial and passed upon by the trial court after evidentiary hearing into the allegations of jury misconduct, jurors cannot impeach their verdict, unless Sixth Amendment rights under the United States Constitution are involved, which did not occur in this case. OCGA § 9-10-9; *Riddle v. Beker*, 232 Ga. App. 393 (501 SE2d 893) (1998); *Lozynsky v. Hairston*, 168 Ga. App. 276 (308 SE2d 605) (1983). The exceptions to this statute apply only in criminal cases in "certain very limited occasions where human life or liberty sways in the balance. But such compelling personal interests of life and liberty rarely are at issue in civil litigation and are not so at issue in this case." *Perryman v. Rosenbaum*, 205 Ga. App. 784, 787 (3) (423 SE2d 673) (1992); accord *Riddle v. Beker*, supra at 393.

For jurors to report misconduct, a juror must speak out prior to discharge after their return of the verdict; thus, jurors must speak out during trial, deliberations, or upon the poll of the jury after the return of the verdict, determining if this was their verdict, to disclose any jury misconduct impeaching the verdict. Under such circumstances the trial court can voir dire the jurors individually to determine if any misconduct took place and either dismiss one or more jurors for misconduct, declare a mistrial, or give curative instructions. *Lee v. State*, 258 Ga. 481, 483 (3) (371 SE2d 389) (1988) (curative instructions after investigating reported misconduct prior to verdict). See generally *Joachim v. State*, 263 Ga. 816, 817-818 (3) (440 SE2d 15) (1994) (jury already discharged when issue arose); *Williams v. State*, 252 Ga. 7, 8-9 (1) (310 SE2d 528) (1984) (same); *Pie Nationwide v. Prickett*, 189 Ga. App. 77, 78 (374 SE2d 837) (1988) (after dismissal of jury but prior to entry of judgment declared mistrial error).

It is the uncontrovertible law of this state that statements of jurors or of third parties indicating that certain of the jurors may have acted on private knowledge or on matters not in

evidence will not be received subsequent to trial to impeach or impugn a verdict nor does a superior court have the legal power to hear or receive such statements.

*Samples v. Greene*, 138 Ga. App. 823, 825 (4) (227 SE2d 456) (1976); accord *Lozynsky v. Hairston*, supra at 276.

Under very rare circumstances where jurors do research and investigation into material facts of the case on their own and share such information with the other jurors, a juror may impeach their verdict in criminal cases, because such juror misconduct violates the defendant's Sixth Amendment right to confront witnesses against them in open court. See *Bobo v. State*, 254 Ga. 146, 148 (1) (327 SE2d 208) (1985). No such conduct has been alleged to have occurred in this case. Thus, the trial court did not abuse his discretion in refusing to talk with the party ex parte.

3. Tench contends that the trial court erred in entering the judgment on the verdict. We do not agree.

(a) The stockholders agreement was not intended to provide all the terms of the agreement and had no merger clause or clause prohibiting oral modification. The agreement in paragraph 9 provided that the surviving stockholder would retain the $90,000; however, all the parties testified that by oral agreement the survivor was to pay the debts of the corporation with such funds. While the written agreement made no provision for disposition of the land and building upon the death of a tenant in common of the undivided one-half interest, this was a collateral oral agreement supported by mutual promises and fully performed. Thus, the oral agreement could be proven by parol evidence. OCGA § 13-2-2 (1); *Adams v. North American Business Brokers*, 168 Ga. App. 341, 343 (309 SE2d 164) (1983); accord *Cooper v. Vaughan*, 81 Ga. App. 330, 338 (58 SE2d 453) (1950). The agreement constituted a valid contract partially in writing and partially parol. *Tanner v. Tinsley*, 152 Ga. App. 330, 331 (2) (262 SE2d 602) (1979).

(b) At trial, Tench raised the four-year statute of limitation to a contract action; however, there exists no statute of limitation for the recovery of an equitable interest in land. *Smith v. Aldridge*, 192 Ga. 376, 380 (1) (15 SE2d 430) (1941). Likewise, the equitable doctrine of laches does not bar this action, because delay alone will not give rise to laches but must be accompanied by prejudice caused by such delay. See generally *Stone v. Williams*, 265 Ga. 480 (458 SE2d 343) (1995). "One who is in possession of property under a claim of ownership will not be guilty of laches for delay in resorting to a court of equity to establish his rights." *Davis v. Newton*, 215 Ga. 58, 60 (2) (108 SE2d 809) (1959).

(c) The Statute of Frauds is not a bar to an equitable claim to title of land, because there was a full performance of the terms of the written agreement and the collateral oral agreement. Thus, equity can compel the conveyance of legal title by specific performance where there has been full performance of the oral agreement and possession of the land, taking such agreement outside the Statute of Frauds. *Smith v. Cox*, 247 Ga. 563, 564 (277 SE2d 512) (1981).

(d) Estoppel by silence has no application to this case, because such doctrine applies where silence amounts to constructive fraud through the acts or omissions of the party under a duty to speak. *Balest v. Simmons*, 201 Ga. App. 605, 609 (2) (411 SE2d 576) (1991); *Dodson v. Kern*, 136 Ga. App. 522, 527 (221 SE2d 693) (1975). Here, LeCroy spoke out as soon as he discovered that neither he nor Galaxy had title to Burlin J. Tench's undivided one-half interest in the land and building although he had fully performed the agreement's terms.

(e) The release signed by LeCroy and Galaxy to Tench and the Estate did not cover the conveyance of the undivided one-half interest, because it did not apply to "unknown claims" and was limited to "any transaction arising out of any business dealings with, from, or on behalf of Galaxy, from the beginning of time through the date of this agreement," which preceded the duty to convey that arose upon the first death of either LeCroy or Tench. Where the issue of intent of the parties regarding future actions was ambiguous and could not be resolved by the trial court through the application of the rules of contract construction, such intent became a jury issue. *Vasche v. John Wieland Homes*, 243 Ga. App. 178, 179-180 (530 SE2d 276) (2000). A general release does not discharge a party for unknown conduct already committed unless the release clearly expresses such intent. *Gibbs v. Dodson*, 229 Ga. App. 64, 68 (2) (492 SE2d 923) (1997). Unless clearly appearing within the release as a subject matter of release, parties will not be presumed to intend to contract away such legal rights. *U. S. Anchor Mfg. v. Rule Indus.*, 264 Ga. 295, 298 (2) (443 SE2d 833) (1994).

(f) The jury after considerable deliberation were deadlocked nine to three, and the trial court gave them an *Allen* charge. The trial court suggested to the parties that they consider accepting by agreement a nine-to-three verdict instead of a unanimous twelve-juror verdict. After discussion with counsel, each party agreed to accept a nine-to-three verdict. The verdict was accepted by all parties, and the jury was not polled on the record.

*Judgment affirmed. Ellington, J., concurs. Smith, P. J., concurs in judgment only.*

Pauline C. Tench, *pro se.*
*Alton M. Adams,* for appellee.