## M'Kinney *against* Reader.

A lease for a term less than three years, whether written or not, may be surrendered or transferred by an oral expression of assent.

An abandonment by the tenant of demised premises, is such a relinquishment as amounts to an implied surrender, and justifies an immediate resumption of the possession by the landlord.

ERROR to the common pleas of *Dauphin* county.

Samuel Reader against Henry M'Kinney. This was an action of trespass, in which the plaintiff set out in his declaration that he was quietly possessed of a house and lot of ground in the borough of Harrisburg, and that the defendant broke and entered into the premises and kept the possession. The facts of the case appeared to be, that the defendant was the owner of the house and lot, and leased them to the plaintiff for one year, at the rent of 200 dollars ; and during the year the plaintiff absconded, and afterwards his family locked up the premises and followed, without leaving property·on the premises sufficient to pay the rent The question in the cause was, whether this were not such an implied surrender of the lease, as justified the landlord in resuming his possession. The court below was of opinion that it was not ; and the jury found for the plaintiff one dollar damages.

*Ayres* and *Johnston,* for plaintiff in error, cited, 6 *Law Lib.* 160, 191; *Burt. Real Prop.* 491; 4 *Kent's Comm.* 106; 3 *Term Rep.* 295; 7 *Term Rep.* 431; 2 *Penns. Rep.* 397 ; 1 *Barn. & Ald.* 370.

*Rawn,* for defendant in error, cited, 6 *Law Lib.* 287.

The opinion of the Court was delivered by

GIBSON, C. J.—What is wanting to the recision of an executory contract, is the assent of the parties ; and it may be signified by their words .or their acts. The recision of a lease by express words, is called a surrender in fact ; and when by acts so irreconcilable to the continuance of the tenure as to imply the same thing, it is called a surrender in law. An implication of surrender is not precluded by the statute of frauds, which concerns a surrender by express words, and of a lease, too, which could not have been validly constituted otherwise than by writing. I am aware that the statute has been applied, in two modern cases, to the express assignment of an oral lease, which stands on the same words as an express surrender : but

[M'Kinney v. Reader.]

the first of them, Bolting *v.* Martin, 1 *Camp.* 318, is a *nisi prius* case ; and the second, Preece *v.* Corrie, 5 *Bingh.* 24, is a decision on the letter, without a pretence of assertion, that it accords with the intent; and it violates a cardinal rule of construction. According to Stowell *v.* Zouch, *Plowd.* 365, it is wholesome, in the exposition of a statute, to approach, as near as may be, to the reason of the common law ; and in Miles *v.* Williams, 1 *P. Wms* 252, it is said the best interpretation is that which conforms to the course of the common law in like cases of its own. The fathers of the law insisted on this with peculiar emphasis. Heydon's Case, 3 *Rep.* 7. Now why the legislature should have purposely contravened a common law maxim, by requiring a matter to be dissolved by writing, which they allowed to be constituted by verbality, it is for those who insist upon the distinction to explain. An intent to establish it would have been a legislative absurdity which is not lightly to be imputed. What greater mischief there can be in a verbal surrender or transfer than there is in the verbal constitution of a lease, has not been shown, and it is not to be supposed that the legislature meant to establish a distinction without a reason for it. The apparent difference in the prescribed forms of constituting and surrendering, arises from the generality of the words predicated of the latter, and ostensibly *in* reference to leases written and unwritten, without discrimination ; but that they were intended for the surrender or transfer of a lease *in* which writing was made a necessary ingredient, is evident from the fact that there is no purpose which requires writing in a surrender or transfer, that does not equally require it in the act of constitution. The two English decisions do not bind us as precedents ; and they are too contracted to bind us by their spirit. Far different was the spirit that dictated the construction put on the 13 *Eliz. c.* 10, whose operation, though it declared ecclesiastical leases for more than three lives, or twenty-one years, to be void without exception, was suspended during the continuance of the grantor's interest, whose power to lease, notwithstanding the letter, was allowed to be commensurate with it, because it was the interest of his successor which was meant to be protected. I take it, therefore, a lease for less than three years, whether written or not, may be surrendered or transferred by an oral expression of assent. The case of an implied surrender, however, as I have already intimated, was never imagined to be within the statute; and it is with this alone we have at present to do. The question therefore stands not on any supposed statutory provision, but on common law principles of recision ; and I confess I have found no case which comes entirely up to the position, that the desertion of rented premises is a surrender in law : yet for want of a specific proceeding to prevent a failure of justice, we must, as the British courts would have done had not their parliament relieved them from the task, enlarge the class of implied surrenders beyond its limits in the books, by holding that an abandonment is such a relinquishment of the premises as justifies an immediate resumption

[M'Kinney v. Reader.]

of it.　A tenant is doubtless not bound to reside in his rented house, or to occupy it with goods sufficient to answer a distress.　He may choose to pay for a barren possession without giving cause of complaint to his landlord, who bargained only for his personal responsibility; but when that has been withdrawn by fraud or flight, the landlord may surely take the only measure left for his security, instead of stupidly gazing on the dilapidation of his property, and a daily accretion of the unpaid rent, on the desperate responsibility of a fugitive.　Did a principle so indispensable to justice need support from authority, something like it might be had from Savage *v.* Dent, *Str.* 1064, where the locking up of a small part of the tenant's property in the house, was barely held not to rebut a presumption of relinquishment from his removal, though with the landlord's knowledge, to a place in the same city.　What would have been the conclusion from flight, had it been a feature of the case, may be conjectured from the conceded fact, that an entire vacancy of the possession would have justified the landlord's entry to seal a lease and deliver a declaration in ejectment.　Why an ejectment should be necessary to change the possession, I know not.　That a right of entry may not be enforced by act of the party to the jeopardy of the public peace, I admit; but an entry for special purposes, is equally founded on a dissolution of the previous relation; and the rule of policy for the preservation of the peace, is inapplicable to a relinquishment which is a virtual surrender.　It would be oppressive, as well as nugatory, to put the landlord to an action, which would seldom restore him to the possession before the appointed expiration of a lease which has less than three years to run ; and had the legislature supposed a summary remedy to be necessary, in a case of desertion, it is to be supposed they would have given it when they provided for the case of adverse holding over.　There is nothing adverse, however, in relinquishment, before or after the expiration of the term ; and they may well have thought there is nothing in it to call for an adverse remedy.　Thus stands the common law here, and as it would have stood in England had it not been for the enactment of the 11 *Geo.* 2, *c.* 19, and the 57 *Geo.* 3,, *c.* 52, which provided a more expeditious remedy than ejectment for desertion without leaving sufficient on the premises to answer a distress for half a year's rent. It is needless to say those statutes are not in force here ; nor is the redress afforded by them so convenient or effectual as that which may be had from the proposed principle of implied surrender.　Here the tenant had locked up his effects and fled from the state with an avowed intent to evade the rent ; and though in his letters from Jersey, whence he carries on this suit, he expressed a desire to return, checked by fear of arrest, he spoke as would an absconding debtor, and gave particular directions for the retreat of his family with his effects.　Can it be that these circumstances did not constitute a surrender which authorised the landlord to resume the possession for the preservation of his property, and the avoidance of a loss from

the misemployment of it? He might possibly have had a remedy by the act of the 3d of April 1830; but I cannot think the law so unreasonable as to say that he became a trespasser.

Judgment reversed.