# Girard Trust Co., Agent, v. Tremblay Motor Co. et al., Appellants.

*Judgments — Declaratory judgments — Practice, C. P.—Act of June 18, 1923, P. L. 840—Res judicata.*

1. Where a petitioner for a uniform declaratory judgment under the Act of June 18, 1923, P. L. 840, prays for the construction of a lease, and the defendant by his answer submits himself to the judgment of the court as to the true interpretation of the lease, a judgment of the court construing it, will make the controversy res judicata for all future purposes between the parties to such proceeding.

*Landlord and tenant—Lease—Covenants—Provision as to fire insurance—Payment of premiums by tenant—Collection of principal by landlord.*

2. A provision in a lease that the lessee shall pay insurance premiums, amounts merely to an increase of rent, and has no necessary bearing on the construction of other clauses in the lease.

3. A provision in a lease that the landlord may collect the insurance money in case of fire, cannot of itself enlarge the landlord's obligations under the lease or diminish those of the tenant.

*Landlord and tenant—Covenant to repair—Duty to rebuild after destruction by fire—Construction of lease.*

4. While a covenant to repair or keep in repair, might, standing alone, impose upon the tenant the duty to rebuild in case of fire, such duty will not be imposed on him where the lease expressly provides that "damage by accidental fire shall be excepted," and contains other references and special provisions on the subject of rebuilding in case of fire, none of which explicitly places such burden on the lessee.

5. The fact that a lessee is relieved from an obligation to rebuild in case of fire, does not cast that liability on the lessor.

6. A covenant obliging a landlord to rebuild is not to be implied.

7. A covenant in a lease that "should the premises at any time during the term be totally destroyed by fire, it is understood and agreed that no rent shall be claimed or collected by lessor from lessee until the premises shall have been completely rebuilt," imposes no obligation to restore on the lessor.

8. A provision in a lease that the lessee in case of fire must change his goods on the premises from place to place as directed

by the lessor or his contractor in charge of restoration, is only to facilitate the rebuilding of the property if the lessor wishes to do so, and does not bind the latter to make use of the opportunity thus given to rebuild, much less can it be construed as an express covenant to rebuild.

*Landlord and tenant—Covenants—Implied warranty—Particular use of building.*

9. A stipulation in a lease prohibiting certain uses of demised premises are not the same as covenants granting the premises for specific uses; the former are conditions for the benefit of the lessor, while the latter are agreements for the benefit of the lessee.

10. There is no implied warranty under the law of Pennsylvania that the demised premises are suitable for the purposes for which they are let.

11. The fact that a tenant is specifically restricted to the use of the demised premises to "Offices, Showrooms and service station" purposes, does not raise any implication that the premises were suitable for such purposes, nor, in the absence of any other provision, that they will be kept fit for such purposes.

*Landlord and tenant—Use of premises for automobile purposes —Effect of later statute forbidding use for one of the purposes— Act of May 10, 1923, P. L. 184.*

12. Where a lessee is restricted by the terms of his lease to the use of the premises for automobile purposes, a statute subsequently enacted which prevents its use for certain of the purposes will not deprive the lessee of all beneficial enjoyment of the property, or excuse him from further payment of rent. Ordinarily a lessee is not excused from performance of his undertaking because of unforeseen hardships.

13. Where a three-story nonfireproof building leased for "Offices, Showrooms and service station" is destroyed by fire, and it appears that the Act of May 10, 1923, P. L. 184, forbids the erection of nonfireproof buildings of a height greater than two stories to be used for a garage or automobile service, the tenant cannot demand that the landlord shall build a three-story fireproof building that will give him the same space as the old building supplied for the purposes stated in the lease; nor can the tenant demand the erection of a two-story building with abatement of the rent.

*Landlord and tenant — Abandonment—Implied surrender—Declaratory judgment—Question of law.*

14. An abandonment by a tenant of demised premises is such a relinquishment as amounts to an implied surrender, and justifies an immediate resumption of possession by the landlord.

15. Where on a petition for a declaratory judgment on the construction of a lease, the essential facts as to an abandonment are averred in the petition and admitted in the answer, the question of abandonment is one of law which can be determined by the court.

16. If, in such a proceeding, it appears that, after the destruction of a building by fire, the landlord offers to erect a building substantially of the same size and construction as the one destroyed, and the tenant refuses the offer, the court can and should hold that such refusal is in effect an abandonment of the lease.

*Judgment—Declaratory Judgment Act of June 18, 1923, P. L. 840—Practical help.*

17. A prime purpose of the Declaratory Judgment Act of June 18, 1923, P. L. 840, is to render "practical help" in ending controversies.

18. In this case, the parties should have sought the help of a judicial declaration of their respective rights and liabilities, before taking a definite stand amounting to an ultimatum on each side and asking for a declaratory judgment on the later state of facts.

Mr. Justice KEPHART dissented.

Argued December 7, 1927.   Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 325 and 326, Jan. T., 1927, by defendants, from judgment of C. P. No. 3, Phila. Co., March T., 1927, No. 18447, for plaintiff, on petition for declaratory judgment, in case of Girard Trust Co., agent, to use of Harry B. Hahs et al., executors and trustees of estate of Annie H. Roberts, deceased, v. Tremblay Motor Co. and J. R. Pierpoint. Affirmed.

Petition for declaratory judgment.   Before FERGUSON and DAVIS, JJ.

The opinion of the Supreme Court states the facts.

Judgment for plaintiff, in opinion by DAVIS, J.   Defendant appealed.

*Error assigned* was judgment, quoting it.

*Ralph B. Evans,* of *Evans, Bayard & Frick,* for appellants.—If there is an obligation on the plaintiffs to rebuild, this obligation is not discharged by the Act of 1923: Fire Assn. v. Rosenthal, 108 Pa. 474; Penna. Co. v. Phila. Contributionship, 201 Pa. 497; David v. Ryan, 47 Iowa 642.

If the lease is interpreted as imposing no obligation on either the lessor or lessee to rebuild there is no ground for rescission: Fisher v. Milliken, 8 Pa. 111; Ball v. Wyeth, 8 Allen (Mass.) 275; Allen v. Fisher, 66 N. J. L. 261; Williams v. Tyas, 4 Grant Ch. (Ont.) 533.

*Owen J. Roberts,* with him *C. Russell Phillips,* for appellees.—The landlord is not obligated to rebuild either expressly or by implication: Moore v. Weber, 71 Pa. 429; Pennsylvania Co. v. Bodek, 77 Pa. Superior Ct. 473.

There is no covenant, express or implied, that the premises are fit for the purpose for which they are leased: Kennedy v. Chernow, 17 Del. Co. 276; Graham v. Hay, 81 Pa. Superior Ct. 594; Wood v. Carson, 257 Pa. 522.

Under the present lease the tenant is obligated to rebuild: Hoy v. Holt, 91 Pa. 88; Electric Ry. v. Electric Light Co., 200 Pa. 372; McKinley v. Jutte & Co., 230 Pa. 122.

The new building code prohibits reconstructing the old building and terminates the lease: Cordes v. Miller, 39 Mich. 581; Rooks v. Seaton, 1 Phila. 106; State Line R. R. v. R. R., 277 Pa. 227.

If the lease contained no obligation on anyone to rebuild, the same result would follow: Paxon, etc., Co. v. Potter, 30 Pa. Superior Ct. 615.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 3, 1928:

The Girard Trust Company, agent for the owners of premises 215-17 North Broad Street, Philadelphia, peti-

tioned the court below for a declaratory judgment of the lessor's rights under a certain lease, on a set of facts averred in the petition. The lease and other controlling facts were admitted in answers filed by the two defendants, the lessee and sublessee of the property in controversy. The court below rendered a decision and entered a decree in favor of plaintiff, and defendants have appealed.

The petition prayed that the court "determine the true meaning and construction of the lease and the special clauses and restrictions therein and make a declaration of the rights......of [the lessor or owners of the demised premises] by reason thereof, in accordance with the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840." Defendants, by their answers, submitted themselves "to the judgment" of the court "as to the true interpretation of the lease"; this, of course, meant under the facts shown by the pleadings and subject to the appeal allowed by the statute. Therefore, our determination of the law governing these facts and of the proper construction to be given this instrument will make the pending controversy res judicata (Kariher's Petition (No. 1), 284 Pa. 455, 465-6) for all future purposes, between the present contestants; to that end we shall take the facts as recited in the petition and admitted in the answers and adjudge the respective rights and liabilities of the parties accordingly.

The petition avers title in the constituents of plaintiff; the authority of plaintiff to represent the owners of the property; a lease by plaintiff as agent for the owners, dated February 24, 1923, to defendant Pierpoint for a term of ten years beginning December 1, 1923; a subletting by Pierpoint to defendant Tremblay Motor Company; the fact that there was erected on the demised property a three-story "nonfireproof" building, "used by the lessee and his subtenant" for automobile sales and as a "service station"; and the fact that, on January 2, 1927, the building was destroyed by fire. The pe-

tition then calls attention to the Act of May 10, 1923, P. L. 184, section 5, which provides that "No building used as a garage or automobile service station or for any similar purpose, which is not of first-class fireproof construction, shall be erected to a greater height than two stories," and admits that, "in consequence of the aforesaid statute, a three-story building, if now erected, substantially of the same size and nonfireproof construction as the former building, could not be used as a sales and service station for automobiles, except upon the first floor thereof." Petitioner avers that to erect "a three-story fireproof building which can be used as an automobile sales and service station" would cost "approximately three times the cost of a building of construction similar to that destroyed by fire," and contends that, "as a prerequisite to a right to receive further rent under the lease," it is "required to erect only a building like the original in construction and size." Plaintiff further avers that it "desires," and has offered defendants, to erect "a nonfireproof building, two stories in height," which would not be affected by the Act of 1923, and to allow its occupancy at the rental named in the lease, or to erect, at the same rental, "a three-story nonfireproof building of substantially the same size and construction as the building which was destroyed," whichever defendants prefer; but that the latter had stated they would not pay the full rent mentioned in the lease for a two-story building, and had declined to accept a three-story nonfireproof building, if erected on the premises, "for the reason that [under the Act of 1923] it could not be used as a sales and service station for automobiles, beyond the first floor"; and finally, that defendant motor company had advised plaintiff that it objected to the erection of any kind of a building on the premises "that cannot be used by it just as the building destroyed by fire was used."

The answer of defendant Pierpoint admits the above averments of fact, and states his position thus: "My

contention is that, while plaintiff [is] not required to erect any building on the premises, or may erect such building as [it] sees fit, payments of rent under the lease cannot be claimed or collected......until the premises shall have been completely rebuilt and placed in a tenantable condition"; and, defendant explains, this means that the new building "shall be of substantially the same size and area as the previous building," and shall be of such character of construction that it can lawfully be used "as a sales and service station for automobiles in the same manner and to the same extent as the former building," or, in other words, that it must be a three-story fireproof building.

The answer of the motor company, after admitting the facts which we have recited from the petition, avers a willingness "to accept a two-story building as set forth in......the petition, on condition that a part of the rental be abated," but states it contends "that the plaintiff must erect a building in accordance with the law and......suitable for the purposes set forth in the lease, viz., 'Offices, Showrooms, service station, in connection with lessee's automobile business,' and must give to defendant the same number of square feet as were contained in the building which.......was destroyed by fire." This is construed in the argument of counsel for defendant motor company as meaning that, to entitle plaintiff to the rent stipulated in the lease, it must erect a three-story fireproof structure; and the answer itself states that, "as a prerequisite to a right to receive further rent [plaintiff] must erect a building, both in construction and size, such as will permit of the use for which the plaintiff rented the former building to the defendants, viz., the automobile business."

Both answers deny that a building of the kind defendants demand would be "prohibitive" in price, though they make no effort to meet the allegation contained in the petition that a structure of this kind would cost ap-

proximately three times as much as the building which was destroyed by fire.

At the outset, it must be understood that neither the court below nor this court has power to make a new contract for those concerned, or, by judicial decree, to force either side to accept a modification of the present lease, nor can we construe the Act of 1923 as impairing the obligation of the contract before us; all that we can do in the proceeding is to adjudge the rights and liabilities of the contending parties on the state of facts shown by the record. While under some circumstances contractual rights may be affected through the subsequent exercise of police power by the legislature, "generally the law in force when a lease is made governs......the construction and effect of the lease" (35 Corpus Juris 1174, section 459) and "a lessee is not ordinarily excused from performance of his undertakings because of unforeseen hardships": 35 Corpus Juris 1192, section 501. Authorities that will be cited later in this opinion show that the above rules apply where, as here, the hardship consists of the use which may be made by a lessee of demised premises being adversely affected by subsequently enacted police power legislation.

Before further considering the ruling principles of law, it may be well to examine the lease in controversy. It is quite a lengthy document, and we shall quote only the parts which figure in the present case: "The lessee promises the lessor to,......at the end [of the term] or other sooner determination of this lease, peaceably deliver up the premises in good order and repair......, reasonable wear and tear and damage by accidental fire excepted, and not to assign this lease nor underlet the premises or any part thereof, nor use the same or any part thereof for any other purpose than as Offices, Showrooms, service station in connection with lessee's automobile business......Lessee is hereby given the privilege to sublet in part or as a whole the demised premises to a tenant or tenants who shall be and remain at

all times satisfactory to lessor; this privilege to be considered as a license only, revocable at the pleasure of the said lessor......Lessor reserves for itself and its employees or contractors, and lessee covenants to permit the lessor, by its agents or employees or contractors, to enter any and all portions of the demised premises at any and all reasonable times for purpose of inspection or the making of repairs......And it is further agreed, upon the part of the lessor, in the event of the said premises becoming partially untenantable by reason of fire, that then, and in that case the rent reserved shall be proportionately reduced until the damage so sustained shall have been repaired; and should the said premises at any time during the term be totally destroyed by fire it is understood and agreed that no rent shall be claimed or collected by said lessor from said lessee until said premises shall have been completely rebuilt and placed in tenantable condition.......In event of the destruction of or damage to the demised premises by fire, then and in that event the lessee agrees at his own proper cost, expense and risk to move or cause to be moved his goods and chattels from place to place in the demised premises and in such manner and at such times as may be required and directed by lessor or contractor in charge of the restoration of the fire damage.......Lessee also agrees to make any and all repairs both interior and exterior to the demised premises necessary at the commencement of this lease or which may become necessary during the term of this lease or any renewal thereof, including the roofs and skylights of the building. It is also understood and agreed that any structural changes or improvements are to be made at lessee's own expense and risk, and with the written consent of lessor first having been obtained......Lessee also agrees to pay all premiums of insurance on policies covering the herein demised premises as may be placed by the lessor."

The court below, assuming a covenant on the part of the lessor to rebuild, concluded that the hereinbefore-mentioned Act of May 10, 1923, P. L. 184, section 5 (enacted after the date of the lease) "excuses the lessor from performance of the covenant of the lease to rebuild, and [therefore] the contract is rescinded by operation of law"; it decreed accordingly.

Appellants concede there was no such covenant as assumed by the court below. They say in their brief: "We cannot point to any express covenant requiring the landlord to rebuild, and the general rule being that such a covenant is not to be implied, this court may take the view that there is no obligation on either party to rebuild......While the landlord may not be obliged to rebuild, he may do so if he chooses, and has expressly reserved the right of entry for that purpose. The situation is therefore simply this, that, while the plaintiff may not be obliged to rebuild, rent is suspended until ......[it does, and it cannot] take advantage of the situation to deprive the tenant of his lease." In short, appellants (defendants) contend that the term under the lease continues, but the tenant is under no obligation to pay rent until lessor erects on the demised premises a fireproof structure like the destroyed building, in size and dimensions; that the Act of 1923, supra, in effect so requires.

On the other hand, appellee (plaintiff) contends that, not only is there no covenant in the lease which obliges the landlord to rebuild, but the covenants on the part of the lessee to repair might, under the law, compel defendants to restore the building, if the lessor insisted on that course; though its ultimate position, is, that in no event can the lessor be obliged to do more than it has already offered to do,—reproduce, as nearly as may be, the building destroyed by fire,—and that the Act of 1923 cannot have the effect of putting any greater burden on the landlord. In short, appellee urges that, on any one of several grounds, the formal decree declaring

the term at an end and the lease rescinded should be affirmed.

Thus, as briefly as reasonably possible, we have given a fair picture of the controversy on which the parties in interest ask a judicial declaration of their respective rights, or, in other words, a declaratory judgment.

After exhaustive study and much thought on the numerous points argued in the briefs of counsel, we have reached the conclusion that the court below, while not right as to all the grounds stated in support of its decision, correctly determined this case, for reasons which we shall now state.

Starting with the clause relating to insurance, the fact that the contract stipulates lessee shall pay insurance premiums, while the landlord may collect the insurance, does not affect the solution of the problem now before us; for, in the first place, if the tenant paid such premiums that would amount merely to an increase of rent; next, the facts concerning the insurance actually carried or the amount collected and by whom are not pleaded; and last, even where the landlord collects fire insurance, this fact in itself cannot enlarge his obligations under the written contract of lease or diminish those of the tenant: Magaw v. Lambert, 3 Pa. 444; Bussman v. Ganster, 72 Pa. 285, 289.

There is nothing in the lease which expressly requires either the landlord or the tenant to restore the building on the demised premises in case of its destruction by fire. The contract provides that lessee promises to "deliver up the premises in good order and repair...... reasonable wear and tear and damage by accidental fire excepted"; again, that, in the event of destruction or damage by fire, the tenant, at the behest of the landlord or the contractor in charge of restoration, is to move his goods and chattels in the demised premises from place to place as required; and further, that the lessee agrees "to make any and all repairs, both interior and exterior to the demised premises......which may become neces-

sary during the term of this lease or any renewal thereof." One of these provisions suggests that, in case of destruction by fire during the term of the lease, the landlord is to do the rebuilding, another, that the tenant is to rebuild; but taking the lease as a whole, none of them amounts to a covenant binding either lessor or lessee to restore the building. The covenants by the lessee to repair or keep in repair, standing alone, might impose such an obligation on him (36 Corpus Juris 145, section 782; McKinley v. Jutte & Co., 230 Pa. 122, 79 Atl. 244; Hoy v. Holt, 91 Pa. 88); but this is not so in a case like the present, where it is expressly provided in the contract that "damage by accidental fire [shall be] excepted," and where the lease also contains other references and special provisions on the subject of rebuilding in case of fire, none of which explicitly places that burden on the lessee. The fact that the lessee is thus relieved from an obligation to rebuild does not, however, cast that liability on the lessor; so far as the latter is concerned, in the words of counsel for appellants (the tenant and subtenant), "the general rule is that such a covenant [obliging the landlord to rebuild] is not to be implied" (see Moore v. Weber, 71 Pa. 429, 432), and the provision in the lease that "should the......premises at any time during the term be totally destroyed by fire it is understood and agreed that no rent shall be claimed or collected by......lessor from......lessee until premises shall have been completely rebuilt and placed in tenantable condition," imposes no obligation to restore on the lessor: Woodside v. Talley, 135 Ga. 337, 69 S. E. 492; 36 Corpus Juris 145, section 782. This provision, as is agreed in the briefs of counsel on both sides, simply relieves the lessee from his obligation to pay rent until a new building is erected. Again, the provision that the lessee must change his goods and chattels on demised premises from place to place as directed by the lessor, or the contractor in charge of restoration, is only to facilitate the rebuilding of the property if the lessor should

wish to do so, and it does not bind the latter to make use of the opportunity thus given to rebuild; much less can it be construed as the express covenant to rebuild which the law requires in order to fix a landlord with that duty.

The failure to provide in the lease that either the lessor or the lessee shall restore the building in event of its destruction by fire has placed the parties in the anomalous position that the lessee is in possession, relieved of his duty to pay rent, but having no use for the vacant lot, and the lessor, although representing the ownership of the premises, is unable to collect rent until the building is restored and in "a tenantable condition," though with no duty to rebuild. The lessor has taken the initiative to relieve this unfortunate situation by making the two offers previously mentioned: (1) To erect a nonfireproof building, two stories in height, which, under the Act of 1923, can be used in all its parts as an automobile service station; (2) to erect a three-story nonfireproof building of the same size and construction as the building destroyed. Defendants, as previously stated, refused both of these offers, the first on the ground that, although they could use the two-story building as suggested by plaintiff, they would not be willing to pay for it the rent stipulated in the lease, and the second on the ground that the Act of May 10, 1923, prevents them from using a three-story nonfireproof building for one of the purposes mentioned in the lease, —namely, as a "service station" in connection with their automobile business.

As we have seen, the lease provides that "no rent shall be claimed or collected by......lessor from......lessee [after the premises have been totally destroyed by fire] until said premises shall have been completely rebuilt and placed in tenantable condition." If, in order to collect rent, the landlord must rebuild, and in such a way that the tenant can use the premises for all the purposes mentioned in the lease, it is because the contract con-

tains either an express or an implied warranty by the lessor that the building on the demised premises was suitable for all of these purposes at the time the contract was made and that it would continue in such condition for the duration of the term; yet the lease discloses no such warranty, and under the law of Pennsylvania it is well settled that there is no implied warranty between landlord and tenant that demised premises are suitable for the purposes for which they are let: Federal M. Bed Co. v. Alpha Sign Co., 289 Pa. 175, 180. Nor does the fact that the tenant was specifically restricted in the use of the demised premises to "Offices, Showrooms and service station" purposes raise any such implication; a provision of this kind is not a grant for specified uses. 36 Corpus Juris 89, note 69 (b), well states that stipulations in leases prohibiting certain uses of demised premises are not the same as covenants granting the premises for specific uses; "the former are conditions for the benefit of the lessor, while the latter are agreements for the benefit of the lessee," citing Shepard v. Sullivan, 94 Wash. 134, 135, 162 Pac. 34. Here, under this correct test, the provision in question is merely a condition for the benefit of lessor, and it cannot be construed otherwise. Thus we see that the lease contains no covenant that the demised premises are fit for or will be kept fit for the several uses mentioned in the contract, much less that the property will be so maintained in all its parts.

The petition avers that if a three-story building were now erected, of substantially the same size as the one destroyed by fire, but of nonfireproof construction, it "could not be used as a sales and service station for automobiles except upon the first floor thereof," and this averment is expressly admitted in both answers, which, of course, means an admission that the first floor of such a building could be used for the purposes mentioned; but we, treat the Act of 1923 as in effect forbidding the use as a service station of any part of the

three-story structure offered by lessor. But a service station is only one of the several uses to which the lessee is restricted. As just mentioned, the lease provides that the tenant shall not use the premises for any purpose other than "Offices, Showrooms, service station in connection with lessee's automobile business." Whatever may have been the development of the business conducted on the demised premises, there is no reason for assuming that, when the contract was made, the service station was contemplated as the principal use of those enumerated; indeed the position and emphasis given to the "Offices" and "Showrooms," by placing these words first and beginning them with capitals, would rather indicate that "service station" was a subordinate use. The real intention of the provision under consideration was no doubt to restrict the tenant, in his occupancy of the building, to the automobile business, and certainly showrooms and offices form a material part of that business. The Act of 1923, then, would not deprive the tenant of opportunity to make a beneficial use in the automobile business of the three-story building offered by plaintiff, though it would undoubtedly limit such use; but, it is now established in law, that this latter fact is not enough to exonerate a lessee from a contractual obligation to pay rent.

In the well considered case of Conklin v. Silver, 187 Iowa 819, 174 N. W. 573, 7 A. L. R. 832, it was held that, where a lessee was restricted by the terms of the lease to the use of the demised premises for the "iron, metal and rag business," a statute subsequently enacted which prevented its use for one of these purposes did not deprive the lessee of all beneficial enjoyment of the property, or excuse him from future payments of rent, since he could still use the premises in question for the other purposes specified in the lease; and this seems to be the recognized test: Lawrence v. White, 131 Ga. 840, 63 S. E. 631; Standard Brewing Co. v. Weil, 129 Md. 487, 99 Atl. 661. In Jacobs v. Mingle, 278 Pa. 250, 122 Atl.

285, where there was a lease of a hotel with the understanding that it should be used principally to sell liquor, we held that the tenant was not relieved of his liability under the lease by the subsequent enactment of the prohibition law. See 22 A. L. R. 821, for enumeration and discussion of other cases where, although the use of leased premises was detrimentally affected by a subsequently enacted exercise of the police power, it was held that the lessees were not for that reason deprived of their beneficial enjoyment to the extent of relieving them as a matter of law from the payment of rent. We conclude that, notwithstanding the provisions of the Act of 1923, the offer by the lessor to erect a three-story nonfireproof building was an offer to place the leased premises in such a "tenantable condition" as would, if the building were actually erected, require the tenant to pay rent; and that this controversy in no proper sense falls within the class of cases cited by the court below where a covenant has been rendered so impossible of performance, by reason of the enactment of new law, as to nullify the contract of which the covenant in question formed a material part. Here, it is not the effect of the Act of 1923, as we shall presently show, which rules the case, but the conduct of the parties themselves.

It must not be overlooked that, as an alternative to the three-story building, with its restricted use under the present law, plaintiff offered to erect a two-story structure, of which the lessee or his subtenant could make full use, unhampered by the limitations of the Act of 1923, and that the offer was also declined. We have not made much point of this alternative offer because, had the building which it proposed been actually erected and then tendered to defendants, it would not have been sufficiently similar to the one destroyed by fire to have required them to recommence payment of rent under the lease; but the offer was no doubt made in a spirit of compromise, to end an unfortunate situation, and its acceptance might have presented a fair method of allow-

ing the lessee, or his subtenant, to proceed with the automobile business in all parts of the proposed structure, and of enabling the lessor to receive its rent. The inconvenience and loss might thus have been shared by the parties in interest instead of continuing the present mutually unprofitable condition of the property. Had this plan been accepted and carried out, both parties would have made somewhat of a sacrifice,— the owners by having erected on their land an improvement which, at the end of defendants' lease, would probably produce less revenue than the larger building which the premises were capable of accommodating, and the tenant in having less floor space than it had enjoyed in the original building. While what we have just said about the erection of a two-story building goes to the equities of the situation, the offer by plaintiffs to construct a building of the size and dimensions of the one destroyed and the definite and unconditional refusal of that offer by defendants, are the controlling factors on which the controversy between the parties must be ruled.

One other matter may be noticed before stating the ultimate point on which the controversy turns: While neither the landlord nor the tenant is obliged to erect a new structure, yet, the building on the demised premises having been "totally destroyed by fire," no rent can be claimed by the lessor, under the terms of the lease, "until said premises shall have been completely rebuilt [by some one] and placed in a tenantable condition." In addition to its other contentions, plaintiff argues that to this situation the rule announced in cases such as Buschman v. Wilson, 29 Md. 553, ought to be applied, that, "Where it is stipulated in a lease that the rent shall cease if the demised premises are [destroyed], the happening of the contingency determines the lease, and the lessee shall thereupon surrender the premises": see also Snook, etc., Furniture Co. v. Steiner, 117 Ga. 363, 43 S. E. 775, 778. It is unnecessary, to apply that

rule in this case, for plaintiff has offered to do all that the lease requires in order to reinstate defendants' obligation to pay rent; which offer defendants have flatly refused. Their refusal is equivalent to an abandonment. "An abandonment by the tenant of demised premises is such a relinquishment as amounts to an implied surrender, and justifies an immediate resumption of the possession by the landlord": McKinney v. Reader, 7 Watts 123. Finally, since all the essential facts in this connection have been averred in the petition and admitted in the answers, the question of abandonment is one of law which can be determined by the courts; the present case really turns on this point. To reiterate, we have it averred on one side and admitted on the other that the lessor has offered to erect on the demised premises "a three-story nonfireproof building of substantially the same size and construction as the one which was destroyed, and [that it has] been notified by defendants that they will not accept such a building." This refusal is in legal effect such an abandonment of the lease by defendants as to put an end thereto, if lessor chooses so to treat it (see 35 Corpus Juris 1194, section 502); and the fact that, by not appealing, plaintiff has accepted the declaration of the court below that the lease has terminated, is conclusive proof of its choice in this regard.

In a case like the present, by proceeding according to the Declaratory Judgments Act, the parties avoid the necessity of first actually erecting a building in order to be in a position to obtain a judicial construction of their respective rights and liabilities. The lessor, having averred a willingness to erect the kind of a building which it conceives to be sufficient to entitle it to receive rent from the lessee, and the tender of such a building to defendants,—these facts and the good faith of the tender not being denied,—can have it judicially declared whether, under the governing rules of law, the structure tendered meets the requirements of the situation, and, if

erected, would oblige the lessee, or the subtenant, to re-
commence payment of the rent named in the contract of
lease. Lessor can also have a further declaration as to
its rights consequent upon a refusal by defendants to
accept the kind of a building tendered; and this latter
declaration must be, as found by the court below, that
the lease is at an end and plaintiff can repossess itself
of the demised premises.

A prime purpose of the Declaratory Judgments Act
is to render "practical help" in ending controversies
such as the one now before us: Kariher's Petition (No.
1), 284 Pa. 455, 471. Had defendants, instead of refus-
ing the offers of plaintiff, simply taken the position that,
according to their understanding of the law applicable
to the admitted facts, the building tendered would not
give them what they were entitled to under the lease,
and, on that state of affairs, asked for a declaratory
judgment, or joined with plaintiff in asking for such a
judgment, their respective rights might have been judi-
cially declared. Then, after such a determination of the
governing principles of law as we have here made, plain-
tiff could either have erected the proposed three-story
building, and insisted on payment of rent for the bal-
ance of the term named in the contract of lease, or, in
place of actually building, plaintiff could have given de-
fendants notice that its offer to build was still open; if,
under these circumstances, defendants had persisted in
their refusal, plaintiff could have accepted such refusal
as an abandonment of the lease. In other words, had
the parties seen fit, they could have had the help of a
judicial declaration of their respective rights and liabil-
ities before taking a definite stand amounting to an
ultimatum on each side and asking for a declaratory
judgment on that state of fact. As the case comes be-
fore us, we have the lease, the destruction of the
building by fire, plaintiff's offer to erect a new one,
and defendants' refusal, submitted to the court below
for judgment thereon, that tribunal's declaration of law

that the lease was at an end, plaintiff's acquiescence in this conclusion, by not appealing, and defendants' appeal; this is the case as the parties made it, and we must adjudge it accordingly. While not agreeing with the court below that, upon the destruction of the old building, the Act of 1923 had the effect of immediately "rescinding" the lease "by operation of law," we concur in its ultimate conclusion that the lease is extinguished; and since that is the dominating declaration in the case, the judgment appealed from will not be disturbed.

On the principles stated in this opinion and for the reasons which we have given, the declaratory judgment entered by the court below is affirmed as to its final conclusion that the lease is at an end; costs to be paid by appellants.

Mr. Justice KEPHART dissented.